[Civ. No. 953.   Fifth Dist.   May 1, 1969.]

ROSALIE DELFINO, Plaintiff and Respondent, v. FRANK
DELFINO, Defendant and Appellant.

Vizzard, Baker, Sullivan, McFarland & Long and Allan H. McFarland for Defendant and Appellant.

Chain & Younger and Dustin N. Jameson for Plaintiff and Respondent.

CONLEY, P. J.—This appeal is taken from interim orders in a divorce suit awarding compensation and costs to the plaintiff wife's attorneys in a hard-fought and complex divorce suit. The appeal does not involve the final granting of a divorce to the wife for there is a stipulation that no opposition would be urged to it, but the stipulation agrees that the appeals from orders made during the course of the litigation relative to attorneys' fees should be kept alive. The stipulation of the parties shows that the only elements of the case reserved for final decision on appeal, with the current attorneys representing the appellant, are the orders just referred to. It might be said that this appeal does not involve the main ship—the divorce case—but only the flotsam and jetsam.

Frank Delfino, defendant and appellant, and Rosalie Delfino, plaintiff and respondent, were married on December

6, 1964. The union lasted only for a total of 21 months; during most of the time the two engaged in numerous fierce marital conflicts, including some three previous divorce actions commenced by the wife. The couple had one child born June 3, 1965. They finally separated for the last time on September 10, 1966, and respondent's attorneys filed a divorce complaint on her behalf two days later.

The present appeal is based upon two notices of appeal filed by the defendant husband, Frank Delfino. In the first, filed August 1, 1967, he specified that he appealed from three separate orders of the trial court as follows:

(1) a) Order filed July 20, 1967, granting respondent's motion to vacate default and set aside decree of annulment;

b) Order dated July 7, 1967, granting respondent's attorneys, Chain & Younger, additional attorneys' fees of $7,500, plus costs of $3,309.74;

c) Clerk's Minute Order of June 29, 1967, granting respondent's attorneys a $2,000 fee, said sum being contingent on appeal. Respondent says that this portion of the appeal was not perfected and concedes that no claim is made for this fee on the present appeal;

(2) The second notice of appeal was filed December 21, 1967, from an order dated December 5, 1967, granting respondent's attorneys another $2,000 fee allowance for services in the present appeal.

In her divorce complaint, respondent asked for custody of the child of the parties and support for the minor, alimony for the plaintiff, attorneys' fees and costs, and a division of the community property. This application was heard by Judge Borton on an order to show cause on November 1, 1966. Both parties were present with counsel. Each party testified and was cross-examined by opposing counsel. Appellant's accountant, Emil Reed, was also examined on both direct and cross-examination as to appellant's financial affairs. Judge Borton signed an order on November 7, 1966, granting respondent temporary custody, child support and alimony, attorneys' fees and costs not directly involved on this appeal.

On December 22, 1966, the parties entered into a written property settlement agreement. On the following day, December 23, 1966, pursuant to written stipulation, appellant filed a third amended cross-complaint for an annulment, and obtained an annulment decree by default that day. Respondent's counsel advised her that he did not recommend or approve the property settlement agreement or the procedure obtaining the annulment.

On January 26, 1967, respondent filed a motion to vacate her default and to set aside the annulment decree. This motion was accompanied by affidavits in an attempt to show that respondent had been deceived by the appellant in order to induce her to enter into the property settlement and permit the appellant to obtain the default decree.

After hearings on this motion, the trial court issued its memorandum decision of July 13, 1967, criticizing the appellant's conduct in the matter and granting the motion. On July 20, 1967, the formal order granting the motion was entered, giving the respondent 20 days within which to file her answer to the cross-complaint. Respondent states in her brief that before she could do so, appellant filed his notice of appeal from the order on August 1, 1967. The answer was never filed.

Between the time that respondent filed her motion to set aside the annulment decree and the granting of the motion, there were several motions and hearings before the court. Respondent filed an application for attorneys' fees and costs in regard to these matters on June 12, 1967, together with affidavits explaining the services and matters for which the order was sought. After a hearing, by order entered July 11, 1967, the court granted an award of $7,500 attorneys' fees and costs of $3,309.74. As already stated, this order was appealed from in the notice of appeal filed August 1, 1967.

Respondent claims that it was to defend against that appeal that she made an application on September 8, 1967, for attorneys' fees on appeal. This application was granted and the court made its order for a $2,000 fee allowance on December 5, 1967, from which the appellant again appealed on December 21, 1967.

On March 28, 1968, respondent filed a motion in the trial court for a substitution of attorneys; in an accompanying affidavit she alleged that a tentative settlement had been reached with the appellant except for the fee and costs orders on appeal, and that she intended to enter into a stipulation with him that all matters on appeal would be dismissed except as to those orders. She further stated that she wished to continue with her present attorneys, Chain & Younger, for the appeals from those interim orders but that she wished to substitute other attorneys for the purpose of applying for her interlocutory decree of divorce in the trial court. This motion was heard on April 1, 1968, and the order of substitution was filed May 22, 1968, wherein Bultman, Bianchi & Kelly were substituted as her attorneys for the purpose of asking for the

560

interlocutory decree, but Chain & Younger remained attorneys of record for matters pending on appeal to this court.

On June 7, 1968, the parties with respondent's new attorneys filed a stipulation in court providing that she could proceed upon her complaint as a default matter at any time thereafter. The appellant's default was entered on July 5, 1968, and the default hearing for respondent's interlocutory decree was held on July 10, 1968, on her original complaint. The decree was signed and filed in the latter part of August 1968.

A written property settlement and addendum agreement, both dated July 10, 1968, and signed by the parties and their attorneys, were admitted into evidence at the default interlocutory hearing on July 10, 1968, and were approved as part of the hearing. This new property settlement agreement referred to the previous agreement of December 22, 1966, and the default annulment decree of December 23, 1966, and superseded that prior agreement. It further provided that respondent might apply for a default interlocutory decree of divorce. It also referred to the prior litigation between the parties and stated their desire to settle all of their claims and demands by the new agreement. It also provided that all appeals should be dismissed immediately upon execution of the agreement, with the exception of the award of attorneys' fees and costs and the right of the superior court to order fees of that amount, and reserved the power of the appellant to continue the appeals as to those matters. Respondent states in her brief that the final decree of divorce was entered in the civil judgment record, book 187, page 125 of the Kern County Superior Court on October 4, 1968.

To recapitulate, there exist two orders in the nature of judgments awarding the sum of $7,500 and costs of $3 309.74 to Messrs. Chain and Younger, attorneys for Rosalie Delfino, and another $2,000 attorneys' fee for their representation of the respondent on the instant appeal. Otherwise, there is a final decree of divorce in favor of the plaintiff-respondent and a final binding property settlement agreement between the parties.

Several of the matters which counsel for appellant seek to question were defeated at the very outset by the agreement of the contesting parties. It is impossible to believe that the attorneys for the defendant husband want the remedy which is here put forward when plaintiff wife has won a finally uncontested divorce decree before the judge whom the attorneys for the respondent now seek to disqualify. If appel-

lant's counsel should be successful in their contention that the judge should have disqualified himself, pursuant to California Code of Civil Procedure section 170.6 on February 24, and that, as they state in their brief, "all subsequent hearings heard thereafter and . . . all orders made by him are void after that particular date," they, by this means, would perhaps lay the ground to set aside the final divorce decree which was later obtained from this judge. We also think that a finding that the judge was disqualified and that all subsequent acts done by him were, therefore, void would be directly contrary to the stipulation entered into by counsel for both parties to the effect that the only question to be decided on the appeals was whether or not the court properly allowed attorneys' fees in the amount of $7,500 and $2,000 and costs. We, therefore, refuse to act contrary to the stipulation and to adjudicate that particular point.

It is permissible, however, to say that if we did consider that contention, we would deny the attempt to disqualify Judge Borton. During the course of the trial below, this court denied respondent's petition for a writ disqualifying Judge Borton for the same reason now advanced; the Supreme Court did not grant a hearing thereafter and with good cause. That court has stated without equivocation that if subsequent proceedings in a case involve substantially the same issues as were heard once by the trial judge, they are but a continuation of the original proceedings and the judge should not be disqualified after late challenge under section 170.6 of the Code of Civil Procedure. (*Jacobs* v. *Superior Court,* 53 Cal.2d 187, 190 [1 Cal.Rptr. 9, 347 P.2d 9] ; *McClenny* v. *Superior Court,* 60 Cal.2d 677 [36 Cal.Rptr. 459, 388 P.2d 691].)

Somewhat similarly, respondent's motion to set aside the default decree of annulment cannot be attacked logically in this proceeding. The parties to the suit stipulated that the plaintiff might proceed to attempt to secure a default divorce. If we were to consider the point and should come to the conclusion that the trial court had no right to grant the motion to set aside the default annulment decree, a situation would be developed at direct variance with the decree of divorce that the court later made after noting the stipulation of the parties. As previously stated, the stipulation was that the appeals should be carried on with respect to the award of attorneys' fees and costs to the plaintiff's attorneys.

We now come to the contention that the trial court committed reversible error in the award of the $7,500 fee by shortening time for the hearing to a single day while Mr.

McFarland, the member of the law firm representing defendant who was most active for defendant in the case, was engaged in a jury trial elsewhere. We do not believe that the court employed reasonable discretion by shortening the time of the hearing to one day, but we do not think that this error was prejudicial for the following reasons: the partners in the law firm of which Mr. McFarland was a member, that is to say, Messrs. Vizzard, Baker, Sullivan, McFarland & Long, were alerted to the attitude of the trial judge and through their senior partner, Mr. Vizzard, they attempted to secure a continuance that would have given Mr. McFarland the opportunity to represent his client personally in connection with the application of plaintiff's counsel for additional attorneys' fees and costs. The record demonstrates that Mr. Vizzard was not unacquainted with the issues in the case and that he had participated in the preparation of his client's case for the litigation. The question to be determined was what reasonable amount of additional attorneys' fees should be allowed to the lawyers for the plaintiff; that was a question of sound judgment, in the matter of discretion, for the trial court to determine, depending largely upon testimony which would be deduced by the law firm representing the plaintiff. The attorneys for the defendant, through Mr. Vizzard, cross-examined Mr. Chain, senior attorney for the plaintiff, at great length; and a reading of that portion of the official record shows that Mr. Vizzard possessed a comprehensive knowledge of the issues in the case. Therefore, if we consider the imposition of the short time for a hearing as an error, which we do, we do not believe that the error was prejudicial.

The contention made by appellant that the respondent's request to set aside the decree of annulment should have been denied because of unclean hands seems to us to miss the point of that equitable doctrine. Some of the affidavits showed that the plaintiff had committed adultery with a man who admittedly was secretly being paid by her husband. The situation presented was not a pretty one, but the unclean hands doctrine is not designed to rule out unclean testimony. It has been applied in equity suits to prevent a finding of merit in situations where one of the parties planned and executed fraud or inequitable devices to obtain an improper advantage over the other side. The underlying virtue of the doctrine in this instance was rather in favor of the other side, that is to say, the wife, who had been fooled by lies instigated by the money of the husband. The fact that the woman committed

adultery, if certain of the affidavits are to be believed, might well have prevented her divorce if it had been urged, but it did not keep her from alleging facts which were unpleasant about her own morals when the situation was created through the inequitable actions of her opponents.

The last point made by the appellant is that the court had no jurisdiction to grant attorneys' fees and costs inasmuch as an annulment had been granted and that the parties were no longer married. This contention is without merit in view of the fact that the annulment was afterwards set aside; in the long view, it is as if no annulment was ever granted and the award of attorneys' fees and costs was within the discretion of the trial court as in any other divorce action. When in the course of marital litigation, an order to show cause is heard and the court awards temporary alimony, attorneys' fees or costs to the wife, the order becomes in effect a judgment. This interim order was supported by ample evidence.

Were the amounts of the awards excessive? Divorce litigation lends itself largely to reliance upon the finding and judgment of the trial judge with respect to these matters, namely, the award of necessary attorneys' fees and costs, which are primarily and almost entirely in the realm of the trial court's discretion. In this case, the two sides and their attorneys fought fiercely and without letup. As illustrative of the complications and length of the litigation, the reporter's transcript contains 930, plus supplements of 33 and 260 pages; the clerk's transcript 281, with supplements of 31 and 44 pages. Hearing after hearing was held and a fierce conflict reigned for many months between the parties and also between their counsel. We hold that the awards of attorneys' fees and costs made by the trial court were justified in view of the lengthy nature and the complexity and importance of the issues.

The appeal from the orders designated herein as 1(a) and 1(c) are dismissed; the orders designated herein as 1(b) and 2 are affirmed; respondent shall recover her costs on appeal.

Stone, J., and Gargano, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 25, 1969. Peters, J., and Mosk, J., were of the opinion that the petition should be granted.